(No. 5751. March 21, 1932.)

STATE, Respondent v. RULON WILSON, Appellant.

[9 Pac. (2d) 497.]

Walter H. Anderson, for Appellant.

Fred J. Babcock, Attorney General, Z. Reed Millar, Assistant Attorney General and Isaac McDougall, Prosecuting Attorney, for Respondent.

662

BUDGE, J.—Appellant and three others were jointly tried and convicted of the offense of injuring a public jail, as defined by C. S., sec. 8562. From the judgment of conviction and from an order denying his motion for new trial appellant alone appeals.

The record discloses that all of the defendants and appellant were represented upon arraignment and throughout the trial by counsel appointed by the court. In proceedings connected with the motion for new trial and this appeal appellant is represented by other counsel.

The evidence establishes conclusively that appellant's three co-defendants, on the night of March 13, 1931 and early morning of March 14, 1931, by means of hacksaws, cut a hole in the steel floor of a tank in the Bannock county jail, in which they were confined, crawled through the hole and the space between the floor of the tank and the floor of the jail, and also by the use of hacksaws cut through two iron bars in a window of the jail, through which they unsuccessfully prepared to escape, being there apprehended by two deputy sheriffs. The following evidence tends to connect appellant with the crime charged:

A police officer, chief of detectives and a deputy sheriff testified to a conversation had with appellant on March 24, 1931, at the office of the chief of detectives after appellant's arrest on that day, each testifying substantially as follows: That appellant was advised that he did not have to make a statement unless he wanted to; that he talked freely; that he said he had visited a woman at the county jail but repeatedly stated that his co-defendant Cornish was the only man that he knew and visited there and that he had talked with him about purchasing his (Cornish's) car; that appellant stated that he purchased hacksaws at Manning

& Sorgatz's, a hardware store, and acid at Whittlesley's drug-store, both in Pocatello, and delivered the hacksaws and acid to the county jail; that he also stated that the party he delivered the hacksaws and acid to at the county jail offered to pay him for doing so but he only took what the acid and hacksaws actually cost; that he would rather not name the party he gave these articles to as he "didn't want to be classed as a rat," although one witness testified positively that appellant said he delivered the saws to Cornish; and that appellant said he signed the register at Whittlesley's drug-store when he purchased the acid.

A deputy sheriff testified that in a conversation with appellant's co-defendant Lucero, in the sheriff's office on March 14, 1931, Lucero stated that a bottle of acid was sent to Cornish but the bottle was dropped and broken. Another deputy sheriff testified that in a conversation with appellant's co-defendant Cornish in the sheriff's office on March 14, 1931, Cornish "contended from the start that he was to blame for the whole thing."

H. B. Whittlesley, proprietor of Whittlesley's drug-store, testified that he knew appellant; that appellant was in his drug-store almost every day and on March 8 or 9, 1931, purchased hydrochloric acid; that four days prior thereto appellant asked the witness what kind of acid would eat soft iron off hard steel; that the witness informed him that the acid would eat both and he better use an oxyacetylene torch but appellant said that could not be done.

Walter J. Ford, pharmacist employed at Whittlesley's drug-store, testified that he knew appellant and that on March 8, 1931, appellant was in said drug-store and purchased twelve ounces of hydrochloric acid and that he saw appellant sign the poison register, introduced in evidence, after making such purchase "George Rogers, 654 North Ninth," and that the witness initialed such signature.

There is also evidence to the effect that at least one hacksaw was found in the window of the jail at the time appellant's co-defendants were apprehended. The sheriff and a deputy testified that about the middle of February, 1931,

a thorough search of the jail was made and two hacksaw blades were found and removed.

In support of his motion for new trial appellant filed an affidavit in which he avers: That two of his co-defendants were shackled together in the presence of the jury during the trial; that he desired to testify but his counsel would not permit him to do so, and his co-defendant Cornish was likewise prevented from testifying in behalf of appellant; that had they been permitted to testify, appellant would have denied any connection with the offense and would have been corroborated in that respect by Cornish; that after the conversation at the police station appellant was taken to the prosecuting attorney's office where he was questioned at great length; that he was assured by the chief of detectives that "if he would confess and plead guilty that he could clear himself," saying that appellant "had better talk and clear himself." A counter-affidavit was filed by said chief of detectives denying the statements attributed to him in appellant's affidavit, but averring that before any questions were asked he advised appellant of his constitutional rights; that he was under arrest; that he did not have to talk if he did not want to; that anything he might say could be used against him; and that thereafter appellant told the story related by the witnesses during the trial.

Appellant assigns as error the action of the trial court in overruling his motion for new trial which was based upon the following grounds, among others:

1. That appellant was prevented from having a fair and impartial trial for the reason that he was not permitted by his counsel to testify in his own behalf and was not permitted by his counsel to call as his witness his co-defendant, Cornish, by whom it could have been established that appellant had nothing to do with the alleged offense.

2. That if appellant had been permitted to testify he could have shown that the alleged confession was improperly obtained and not freely given.

3. That it was error to try appellant while two of his co-defendants were handcuffed or shackled together in the.

presence of the jury, there being no necessity for such handcuffing or shackling.

4. It was erroneous to try appellant upon an information alleging that he had an *alias*.

 The grounds upon which a court may grant a new trial are statutory and are enumerated in C. S., sec. 9017, which reads in part as follows:

"When a verdict has been rendered against the defendant the court may, upon his application, grant a new trial *in the following cases only:* . . . . "

 The grounds specified in said section are exclusive and cannot be extended by the courts by rule. (*State v. Davis,* 6 Ida. 159, 53 Pac. 678; *People v. Amer,* 151 Cal. 303, 90 Pac. 698, and cases cited therein; 16 C. J. 1121; 8 Cal. Jur., p. 414, sec. 442.) The alleged grounds specified above do not fall within those enumerated in C. S., sec. 9017, *supra,* and the trial court was without authority to grant a new trial upon such grounds.

Furthermore, it may be observed, with reference to the first and second alleged grounds set forth above, that appel-' lant did not offer himself as a witness at the trial, neither did he call his co-defendant Cornish as a witness. There was no error in this respect, committed by the trial court here for review.

 Also, as to the third alleged ground above specified relating to the handcuffing of two of appellant's co-defendants, the court's attention was not called to this fact, no objection or exception was made or taken thereto, and any objection thereto was waived. (*State v. Baker,* 28 Ida. 727, 737, 156 Pac. 103, and cases therein cited.)

 With reference to the fourth ground, relating to trial upon information alleging that appellant had an *alias,* it should be noted that the record discloses no objection was made either to its form or substance, and the objection was therefore waived. (*State v. Maguire,* 31 Ida. 24, 169 Pac. 175.) The presumption also attaches that proceedings were had in reference to this matter as prescribed by C. S., sec. 8861.

■ Appellant seeks to predicate error upon the action of the court in receiving evidence of the alleged purchase of acid upon the ground that no acid was used in the commission of the crime. Appellant objected to the introduction of certain evidence given by witness Whittlesley touching the matter of the purchase of acid. However, evidence covering the same matter was given by the witness Ford, to which no objection was made. In such circumstances appellant will not be heard to say that he was prejudiced by the admission of the testimony objected to. (*State v. McClurg*, 50 Ida. 762, 790, 300 Pac. 898; 17 C. J. 322, 323; 8 Cal. Jur. 616, sec. 599 (note 7).)

■ Appellant urges as prejudicial error the action of the trial court in receiving evidence, over objection, that in February, 1931, prior to the commission of the offense involved, the sheriff and his deputies made a search of the jail and hacksaws were found and removed. We are not inclined to the view that the admission of this evidence, if erroneous, was prejudicial. From the fact that a thorough search of the jail was made for hacksaws or other articles that might be used by prisoners confined therein in effecting an escape, and that certain hacksaws were found and removed after the search, the jury could logically reach the conclusion that the hacksaws used in the commission of the offense were brought into the jail after the search, or it was at liberty to believe that the hacksaws used by appellant's co-defendants were the ones delivered to the jail by appellant. (*State v. Willis*, 24 Ida. 252, 132 Pac. 962.)

■ We come now to the serious question involved in this appeal, covered by the remaining assignments of error, to wit: The sufficiency of the evidence to support the verdict and judgment based thereon. If appellant was guilty of the offense charged it was as an accessory before the fact, in that he aided and abetted his co-defendants in the commission of the crime charged. C. S., sec. 8093, provides, *inter alia:*

"All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense or aid and

abet in its commission . . . . are principals in any crime so committed.''

See, also, *State v. Sheehan,* 33 Ida. 103, 190 Pac. 71. The court so instructed the jury. We think the rule with reference to evidence against accessories to be correctly stated in 16 C. J. 144, sec. 157, as follows:

''As a general rule all evidence which would have been admissible against the principal is also admissible against the accessary on his trial to prove the guilt of the principal. Thus the acts and declarations of the principal tending to show guilt may be shown, provided there is other evidence tending to connect defendant with the crime as instigator or accessory before the fact.''

See, also, *Keith v. State,* 103 Tex. Cr. 636, 282 S. W. 251; *State v. Leeper,* 199 Iowa, 432, 200 N. W. 732; 1 Nichols' Applied Evidence, p. 289, sec. 5. Therefore, the acts and declarations of appellant's co-defendants tending to show their guilt were admissible in so far as they tended to show the guilt of appellant, providing there was other evidence tending to connect him with the commission of the crime.

■ ■ Appellant urges that the statements made by his co-defendants to the deputy sheriffs, in the absence of appellant, were inadmissible as to appellant, and we are asked to reject the statements which his co-defendants made to the deputy sheriffs on the ground that appellant would not be bound by any statement by a co-defendant after the commission of the crime. The statements were competent as to appellant's co-defendants. No objection was made on behalf of appellant, nor any instruction asked limiting the statements as evidence against the co-defendants only. Therefore we cannot review this matter. (*State v. Aitken,* 240 Mo. 254, 144 S. W. 499, 501; *State v. Shout,* 263 Mo. 360, 172 S. W. 607.) In any event, appellant cannot be heard to complain in view of the fact that the court gave an instruction favorable to his contention.

■ Appellant also takes the position that the statements made by him to the officers were inadmissible for the reason that they constituted a confession and were not voluntarily made. It should first be observed that the prose-

cution offered proof of the voluntary nature of the statements and that appellant was advised that he did not have to make a statement unless he so desired, which facts were not contradicted or rebutted upon the trial, and for the reasons heretofore pointed out could not be considered upon the motion for new trial. However, we are of the opinion that as such statements did not include an acknowledgment by appellant in express terms that he was guilty of the crime charged—an essential element of a confession—the statements constituted an admission. The distinction between a confession and an admission is clearly stated in *State v. Garney*, 45 Ida. 768, 265 Pac. 668, 670, as follows:

"The question is raised whether, in order to sustain a conviction of assault with intent to commit rape, the testimony of the prosecutrix must be corroborated. In this particular case there is corroboration, in the way of a statement made by appellant to the sheriff, at a time when appellant was confined in jail awaiting trial on the charge preferred against him, that he wanted to plead guilty. The admission of this testimony is complained of, on the ground that no proper foundation was laid and that there was no showing that the statement was made voluntarily. Such a statement borders closely on a confession but we are inclined to view it as partaking more of an admission, the difference being that a confession is an outright acknowledgment in express terms, by a party in a criminal case, that he is guilty of the crime charged, while an admission is a statement by the accused of facts pertinent to the issue from which guilt may be inferred and which tends toward proof of the ultimate fact of guilt. (*State v. Stevens*, 60 Mont. 390, 199 Pac. 257; *People v. Ferdinand*, 194 Cal. 555, 229 Pac. 341.) The rule requiring a showing that a confession was voluntary and without promise of immunity or reward does not apply to mere admissions. (*People v. Camperlingo*, 69 Cal. App. 466, 231 Pac. 601; *Wilson v. State*, 17 Okl. Cr. 47, 183 Pac. 613.) The admission of this testimony of the sheriff was primarily for the determination of the trial court; there is no suggestion that the statement was anything other than purely voluntary, and we

are not disposed to hold its admission erroneous. (*State v. Andreason,* 44 Ida. 396, 257. Pac. 370.) "

To the same effect see 8 Cal. Jur., sec. 199, p. 106, sec. 194, p. 98; 16 C. J. 626, 715. Such statements constituting an admission and not a confession, the question whether the same were made voluntarily or involuntarily becomes unimportant. (*State v. Garney, supra.*)

Appellant takes the position, and we think correctly, that conviction of appellant cannot be sustained upon proof of extrajudicial admissions made by the accused, in the absence of evidence of corroborating circumstances tending to show the commission of the offense. However, slight corroborating facts are sufficient. (*State v. Keller,* 8 Ida. 699, 70 Pac. 1051.) Proof of the *corpus delicti,* the injury to the jail, was conclusively established, and there is sufficient direct and circumstantial evidence, aside from the extrajudicial statements or admissions of appellant, to corroborate his admissions and establish his guilt.

Applying the principles of law heretofore announced to the facts as disclosed by the record, we are of the opinion that the evidence, containing corroborating facts and circumstances independently of the admissions of the appellant, is sufficient to support the verdict and the judgment, the weight of such evidence being for the jury.

We find no reversible error. The judgment and order appealed from are therefore affirmed.

Lee, C. J., and Givens, Varian and Leeper, JJ., concur.